HARDY, Judge.
This action was instituted by plaintiff, in propria persona, in the nature of a mandamus proceeding praying for judgment ordering respondent, U. Charles Mitchell, Registrar of Voters for Caddo Parish, Louisiana, to void and cancel relator’s signed request, of date July 27, 1962, for a change of party affiliation from “Democratic” to “No Party.” A rule nisi was issued and fixed for hearing on August 6, 1962. On said date defendant filed an exception of no cause nor right of action and an answer. After trial on the rule, judgment was rendered on August 6th, and signed on August 7th, 1962, recalling the alternative writ of mandamus and rejecting relator’s demands. From this judgment relator prosecutes this appeal.
The pertinent facts have been established without controversion. For a number of years prior to July 27, 1962, relator was a qualified registered voter in the City of Shreveport, Parish of Caddo, and was affiliated with the Democratic Party. On July 27, 1962, the day before the holding of the first democratic primary election of candidates for various municipal, parish and district offices, relator presented himself in person at the office of respondent registrar and made written application to change his party affiliation from “Democratic” to “No Party.” The application was accepted and filed by the respondent registrar. On July 31, 1962, relator again appeared in person at the office of the respondent registrar of voters and verbally requested that said registrar destroy or cancel relator’s written application for a change of party affiliation made on date of July 27th and continue relator’s affiliation with the Democratic Party, as shown on the registrar’s books, for the purpose, as avowed by relator, of permitting a showing of his uninterrupted and continuous affiliation with the Democratic Party. This request was refused by respondent registrar, whereupon the mandamus proceeding was filed on August 1, 1962.
Relator’s contention is that his application for a change in party affiliation was made during the period in which the books of the registrar’s office were closed for the purpose of registration of voters, and that the acceptance of the said application by the registrar within this period was illegal, null and of no effect. From this premise the conclusion is asserted that relator’s application should be cancelled and erased, declared to be void and of no effect and he should be restored to his pre-existing affiliation with the Democratic Party.
*52 Relator farther alleges and argues that, under LSA-R.S. 18:33, a voter has no right to change his party affiliation during the thirty day period preceding a primary election within which the registrar’s hooks are closed. In support of this contention, relator alleged and urges that advice to such effect was given the respondent registrar by Honorable Ferdinand A. Cashio, Assistant Attorney General of the State of Louisiana, which opinion is supported by the pronouncement that:
“During 30 days preceding a primary election a voter has no right to change his party affiliation.” (Attorney General’s Opinions, 1924 — 26, page 235)
With respect to the contentions immediately above noted, it must be observed that the Assistant Attorney General denied the issuance of the opinion set forth, and, further, the quoted statement from the Attorney General’s Opinions was based upon Act 122 of 1921, the provisions of which have been superseded by legislation subsequently adopted and now in effect. Parenthetically, it may be observed that the opinions of Attorneys General, while yhly regarded, do not constitute authority for judicial conclusions.
The questions presented by this appeal are governed by the provisions of the Louisiana Revised Statutes. The method and manner prescribed for changes in party affiliation are found in LSA-R.S. 18:33 and the pertinent portion of the cited section reads as follows:
“Any person may change his party affiliation by applying to the registrar, requesting in writing that the change be made. The registrar, upon such request, shall note the political party designated by the registrant in the proper column of the precinct register.”
Provisions with reference to the closing of the books for the purpose of registration are found in LSA-R.S. 18:170:
“Registrars shall close registration of voters 30 days prior to any primary or general election. No entries or changes in the hooks of registration shall be made thereafter, except for the following purposes:” (Enumerated exceptions are without application.) (Emphasis above by the court.)
According to the undisputed testimony of the respondent registrar of voters, the written application of change in party affiliation, as above described, was accepted during the thirty day period immediately preceding the first democratic election of July 28, 1962, and was filed in his office to be properly noted in the precinct registration book after the books were re-opened for a brief period following the first primary election. The registrar also testified that it was the common practice of his office, which had endured for a long period of time, to accept applications for changes of party affiliation at any time, even during periods when the books were closed for the purposes of registration, but that such changes were not validated and made effective except during periods when the registration books were open.
We are unable to ascertain any irregularity, much less any illegality, in the procedure noted. The wording of the Act clearly indicates that the books are closed for the registration of voters for a period of thirty days prior to any primary or general election. However, there is no prohibition against the making of any legitimate request for a change in party affiliation and the filing thereof in the office of a registrar of voters. The only prohibition is against the entry of any such change in the registration books. In the instant case the registration books had already been delivered by the registrar to the authorities charged with the responsibility of conducting the election. The party affiliation of all voters as reflected in such registration books was fixed as entered therein and possibly endured through the primary election of July 28th. However, following the election and after the re-opening of the books, it is clear that the registrar was under the compulsion of the statutory provisions to *53 note any entries or changes, including the one under examination, for which application had been properly and legally made. Following this action by the registrar, any further change in party affiliation could be ■effected only in the manner provided by law, that is, written application by the registrant.
It is pertinent to observe that on July 31st, when relator was personally present in the office of the registrar, the books were open for all purposes and relator had both the right and the opportunity to execute a proper application to change his party affiliation from “No Party” back to “Democratic”, if he so desired. According to the uncontradicted testimony of respondent, he so advised the relator, who, however, refused to take the action suggested. It is an elementary principle that courts will •not afford relief to litigants who have failed' ■or refused to take action which would have preserved their rights wtihout the necessity for litigation.
We find no error in the judgment .appealed from, and, accordingly, the same is affirmed and the cost of this appeal is assessed against relator.