558 So.2d 1296 (1990)
INTRACOASTAL PIPE SERVICE, CO., INC.[1]
v.
ASSUMPTION PARISH SALES AND USE TAX DEPARTMENT, Assumption Parish School Board, Assumption Parish Police Jury.
No. CA 88 0844.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Rehearing Denied April 25, 1990.
Nathan Gisclair, Jr., New Orleans, for plaintiff Intracoastal Pipe Service.
Jeffery Diez, Gonzales, for defendants.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, SHORTESS and FOIL, JJ.
COVINGTON, Chief Judge.
Intracoastal Pipe Service Company, Inc. (ITCO), appeals the decision of the district court which held it liable for $80,132.96 in taxes, interest, and penalties relating to its oilfield pipe cleaning and repair services in Assumption Parish. ITCO was assessed $120,368.68 for the period of July 1983 *1297 through July 1986 by the Assumption Parish Sales and Use Tax Department (Assumption), based on activities at ITCO's Amelia facility. After timely paying the full amount assessed under protest, ITCO appealed to the Board of Appeals for Local Sales and Use Taxes (Board), pursuant to La.R.S. 33:2890.3 et seq. seeking a refund. The Board ordered a refund by Assumption to ITCO of $40,235.72, but otherwise basically upheld the assessment. The district court affirmed the action of the Board, and ITCO filed the present appeal. For the reasons hereinafter stated, we reverse in part and affirm in part.

BACKGROUND
Appellant ITCO is a Louisiana corporation with its principal place of business in Harvey (Jefferson Parish). It has a second location at Amelia (Assumption Parish), which has been in operation since 1976. The nature of ITCO's business is to provide various services for tubular goods used in the oil and gas industry. These services are categorized into three general areas: testing and inspection, repairs, and cleaning.
Of these three categories of services, only the category of repairs was ever considered by ITCO to be subject to state or parish sales tax; no such tax was ever charged, collected, or paid by ITCO in connection with the other two types of services, cleaning and testing/inspection. ITCO based this policy on a letter dated February 22, 1968 (the 1968 letter), from the Louisiana Department of Revenue and Taxation, in response to ITCO's specific inquiries regarding the taxable nature of the various services it provided. The letter expressly stated that cleaning and inspection/testing services were not taxable under the Louisiana sales tax statutes, but that repairs were taxable.
On December 12, 1986, ITCO received an Audit Assessment letter from the Assumption Parish Sales and Use Tax Department which stated that ITCO owed Assumption sales taxes of $83,459.16, interest on that amount of $16,747.60, and a penalty of $20,161.92, a total of $119,400.31, for the tax period of July 1983 through July 1986. This amount was corrected to a total of $120,368.68, and was largely based on an assessment of sales tax for services categorized by ITCO as cleaning services, considered non-taxable by ITCO. Assumption alleged that these cleaning services were actually repairs, and therefore taxable under La.R.S. 47:301(14)(g)(i) and its own parish ordinance, Section 1.17(7), which tracks the language of this statute.
ITCO paid the $120,368.68 under protest, and on March 10, 1987, a hearing was held before the Board of Appeals for Local Sales and Use Taxes. At the hearing Assumption asserted an additional argument that the taxes were valid as laundry services under La.R.S. 47:301(14)(e) and the identical provision of the Parish ordinances, Section 1.17(5).
The Board rendered its decision on March 31, 1987, and issued written findings of law and fact in April, 1987, all of which were affirmed by the district court without detailed reasons for judgment. Therefore, our focus in this discussion will be on the Board's findings and conclusions.
All parties agree, and the Board found, that the actual amount of invoices in question is $1,532,855.59. ITCO contends that these invoices represent charges for non-taxable cleaning services in accordance with the 1968 letter from the Department of Revenue and Taxation. The Board held that these transactions were taxable sales of service under Section 1.17, resulting in sales tax due of $63,254.94, together with 12 percent interest, but no penalty or attorney's fees.
The Board also found, as the audit revealed, that ITCO was liable for $17,269.27 of sales tax attributable to services other than cleaning services (repairs). This amount was not and is not contested by ITCO, as it concedes that repair services were conducted at the Amelia facility beginning *1298 in 1985[2] for which sales taxes were erroneously not collected. A penalty of 25 percent of this amount, or $4,317.32, was assessed against ITCO, which is also not contested.
ITCO argues that its cleaning services do not constitute repairs within the meaning of the applicable taxing statute and parish ordinance. A substantial part of the March 10 hearing was devoted to testimony on the technical details of those services ITCO categorizes as cleaning, for the purpose of demonstrating that these services could not be considered repairs. The crux of ITCO's position is that since taxing statutes are construed strictly against the taxing authority, and the basis of the assessment against ITCO was for sales of services constituting repairs, if the services are not actually repairs, the tax is invalid. As for Assumption's second, alternative theory for the assessment, that these services are taxable as laundry services, ITCO contends that this alternative theory was not the basis for the actual assessment, and even if it were accepted as such, the cleaning services provided by ITCO do not constitute the type of laundry services intended by the statute and ordinance.
As described at the hearing before the Board, the cleaning services performed by ITCO are limited to a specific type of pipe used in the oil and natural gas industry, referred to as tubing, which is pipe with a diameter of up to 4½ inches. ITCO performs both internal and external cleaning of pipe, by using brushes, high pressure sand and waterblast machines, and pneumatic scraping methods. All cleaning processes are directed to the removal of rust and dirt which accumulate in oil drilling operations, or to naturally occurring corrosion resulting from exposure of metal to air. Additionally, applications of a lightweight oil or grease may be made to protect the cleaned surface or threads, and identifying markings may be added or removed for ITCO's customers. The testimony of ITCO's president was that during the procedures categorized as cleaning services, there is no substantive change of the pipe itself. The whole purpose of the cleaning is to keep the pipe from changing or deteriorating.
Thus, ITCO argues, these procedures are not repairs, as nothing "broken" is fixed. Nor are these procedures the type of laundry service encompassed by La.R.S. 47:301(14)(e) and section 1.17(5), which talk about conventional laundering of dry goods, such as clothes and furniture.
ITCO's arguments and the Board's actions stand or fall based on the construction of the two statutes (and their counterpart ordinances) as to the nature of the disputed services, and the effect given the 1968 letter from the Department of Revenue and Taxation, if any. We turn to consideration of the law and evidence presented.

APPLICABLE LAW AND FINDINGS
La.R.S. 47:302C levies a sales tax on specifically defined services, as set forth in § 301(14). Only those services defined in the statute are subject to the tax. The pertinent subparagraphs of § 301(14) are (e) and (g)(i), set forth as follows:
(14) "Sales of services" means and includes the following:
(e) the furnishing of laundry, cleaning, pressing and dyeing services, including by way of extension and not of limitation, the cleaning and renovation of clothing, furs, furniture, carpets and rugs, and the furnishing of storage space for clothing, furs and rugs.
(g)(i) The furnishing of repairs to tangible personal property, including but not restricted to the repair and servicing of automobiles and other vehicles, *1299 electrical and mechanical appliances and equipment, watches, jewelry, refrigerators, radios, shoes, and office appliances and equipment. Charges for the furnishing of repairs to tangible personal property may be excluded from sales of services, as defined in this Subparagraph, when the repaired property is delivered to the customer in another state either by common carrier or the repair dealer's own vehicle; provided however, that as to aircraft, delivery may be by the best available means. This exclusion shall not apply to sales or use taxes levied by any parish, municipality or school board. Offshore areas shall not be considered another state for the purpose of this Subparagraph.
All parties agree, and the Board found, that the Parish ordinances in question are identical to the state statutes. Since they were adopted after the statutes were enacted, the ordinances are deemed to have incorporated interpretations of the statutes on which they were based, as the Board correctly noted. Sales Tax District No. 1 of the Parish of Lafourche, et al. v. Express Boat Company, 500 So.2d 364 (La.1987).
In 1968, the Louisiana Department of Revenue and Taxation, through its Director of the Sales Tax Division at the time, issued ITCO a letter, which is attached in its entirety as Exhibit A to this opinion, regarding the application of the sales tax statute. The letter stated, "Inasmuch as pipe cleaning and pipe inspection as well as hydrostatic pipe testing are services of a type not included in the definition of `sales of services', such services would not be subject to sales tax." Since that time, for more than 19 years as of the hearing, it is undisputed that the state has never assessed or attempted to collect sales tax based on ITCO's cleaning services.[3] Where a statute is ambiguous, a long-settled contemporaneous construction of a statute by those charged with administering the statute is given substantial and often decisive weight in its interpretation. Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976).
With regard to the Parish's interpretation of its ordinances, it is also undisputed that until now, the Parish made no attempt to collect or assess sales tax on ITCO's activities. The attorney for Assumption conceded in argument below that the difficult financial times faced by this state in general were basically forcing Assumption to consider previously untapped sources of revenuehere, sales tax on ITCO's cleaning services.
While we are certainly aware of and sympathize with the economic problems faced by the state and its political subdivisions, we cannot agree that this situation justifies the current construction of the ordinances in this instance by Assumption.
The fact that a different, earlier apparent construction was held by Assumption is demonstrated through its noncollection or assessment in previous years. This change in interpretation itself points to ambiguity in the statute (and ordinance.) Likewise, the refusal of the Board to assess a penalty against ITCO for nonpayment of taxes on the cleaning services "for good cause" indicates that the language of the statute allowed for a difference of opinion. The votes of the Board members themselves on the question of whether the services were taxable as laundry services or as repairs showed a split of opinion, indicating ambiguity in the language.
It is well settled that tax laws are to be interpreted liberally in favor of the taxpayer, *1300 and that words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the government and in favor of the taxpayer. Hibernia National Bank v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940).
Here, the language of the statutes does not readily lend itself to the contentions of Assumption, under the rules of construction just cited. Subparagraph 14(e) on cleaning services states that the services include "the furnishing of laundry, cleaning, pressing and dyeing services, including by way of extension and not of limitation, the cleaning and renovation of clothing, furs, furniture, carpets and rugs, and the furnishing of storage space for clothing, furs and rugs." As one of the Board members pointed out in his dissent, this provision clearly states that it is not restricted by way of limitation of the illustrations; however, the list certainly provides guidance as to legislative intent. The apparent scope of the statute is that it will apply to items made of fabric or furs. The inclusion of metallic oilfield drilling tubing among these other items, all made of fabric and furs, strains the statutory coverage. Thus, we find that the services described as cleaning services by ITCO do not fall within those services described by La.R.S. 47:301(14)(e), or its Assumption Parish Ordinance counterpart, Section 1.17(5).
Nor do ITCO's cleaning processes qualify as repairs under Subparagraph 14(g)(i), under the rules of statutory construction discussed above. Repair is not defined in the sales tax statute. Therefore, under Civil Code Article 14, "[t]he words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
The only testimony regarding the nature of ITCO's cleaning services was that of its president, John C. Hooper. His testimony was undisputed that the cleaning services do not "fix" anything that is broken, or change in any way the substance of the tubing. The condition of the tubing is merely maintained as useable, as another dissenting Board member pointed out in his dissent. While we would not wish to denigrate or oversimplify ITCO's services, the analogy that appears apt is that of washing dishes. Surface, external impurities accumulate both with use (food residue) and with simple storage (dust). Removal of these impurities in no way repairs the dishes or mends anything broken. While one could use dishes that had not been cleaned from their previous use, it would be both unsafe and undesirable to do so, as the impurities from the prior use would affect the present use (taste and bacterial count). Various methods of cleaning are possible, ranging from simple manual cleaning to technological means (automatic dishwashers). The same principles apply to the oilfield tubing.
Webster's New Collegiate Dictionary defines repair as "to restore by replacing a part or putting together what is torn or broken." Thus, the general, popular use of the word repair does not include the cleaning processes performed by ITCO. The scope of La. R.S. 47:301(14)(g)(i) and Section 1.17(7) of the Assumption Parish sales tax ordinance may not be extended by a forced construction beyond the clear import of the language used therein. Since taxing statutes must be construed strictly against the taxing authority, Collector of Revenue v. Wells Fargo Leasing, 393 So.2d 1244 (La.1981), Assumption's arguments must fall.
We do not find persuasive Assumption's reliance on an opinion of the Attorney General in this instance. The crucial language of that opinion, Number 86-599, dated November 7, 1986, was that "it is the opinion of this office that the repairs to the oilfield drill pipe to make it serviceable again constitutes a sales of services [under R.S. 47:301(14)(g) ]." (Emphasis added.) It has never been disputed by any of the *1301 parties that the repairs ITCO performs are taxable under Section 301(14)(g)(i). By using the word "repair" in its opinion to describe the activities in question by ITCO, the Attorney General's Office clearly demonstrated that it did not fully comprehend the nature of the disputed services. Furthermore, opinions of the Attorney General are not binding on the courts. See, Branton v. Parker, 233 So.2d 278 (La.App. 1st Cir.1970), application denied 256 La. 359, 236 So.2d 497 (La.1970); Blanchard v. Mitchell, 146 So.2d 50 (La.App. 2nd Cir. 1962).
In this instance, we find more persuasive the construction given by those charged with actually administering the statute-here, the Director of the Sales Tax Division of the Department of Revenue and Taxation. We note that in the 1968 letter, the Director clearly distinguished between cleaning activities and repair activities, rather than lumping all of these together under one term. This differentiation, which is made explicit in the letter attached hereto as Exhibit A, demonstrates a greater understanding of the technical processes involved than did the Attorney General's opinion.
Nor do we find the cases cited by Assumption controlling. In Parish of Jefferson v. Ekco-Glaco, 280 So.2d 629 (La.App. 4th Cir.1973), the activities in question by the taxpayer were repairs by definition straightening, repairing, and glazing baking pans and sheets. Likewise, in McNamara v. Stauffer Chemical Company, 506 So.2d 1252 (La.App. 1st Cir.), writs denied, 512 So.2d 454, 455 (La.1987), the activities in question by the taxpayer included decomposing and reconstituting spent sulfuric acidchemical reactions which changed the nature of the acid, not comparable to the physical cleaning processes here. Thus, we find these cases inapposite to the situation at bar.
For the reasons herein stated, we reverse the judgment of the district court insofar as it affirmed the decision of the Board of Appeals for Local Sales and Use Taxes holding ITCO liable for sales tax of $63,254.94, attributable to cleaning services and the interest thereon. There was no penalty assessed on this amount since the Board found good cause existed on the part of the taxpayer for nonpayment. We affirm that portion of the judgment upholding the assessment of $17,269.27, together with a 25 percent penalty of $4,317.32 and 12 percent interest thereon, all attributable to the undisputed repair services performed by ITCO at its Amelia facility during the period in question. We also affirm that portion of the judgment ordering a refund to ITCO of $40,235.72 with 12 percent interest thereon from January 9, 1987, until paid. Costs of this appeal are assessed to defendant, Assumption Parish Sales and Use Tax Department, in the amount of $275.50.
REVERSED IN PART, AFFIRMED IN PART.
FOIL, J., dissents.

APPENDIX A
Intracoastal Pipe Repair & Supply Company, Inc.
Post Office Box 354
Harvey, Louisiana
Gentlemen:
Reference is made to your letter of February 9, in which you state that several of your customers question the charges of sales tax on certain services which you perform for them. You request an opinion as to whether or not you should collect sales tax on the following services:
(1) Pipe CleaningCleaning oil field tubular goods internally with air driven rotary brush or air driven pipe reamer. Cleaning tubular goods externally with handle brushes or with external buffing machine. Cleaning threads on ends of pipe. Spraying pipe internally and/or externally with rust preventive which we furnish and charge customer for. All these cleaning *1302 services are performed as a part of maintaining the pipe in good condition while in storage, preparing the pipe for use by the customer, or preparing the pipe for storage after it has arrived in a storage yard.
(2) Pipe InspectionInternally inspecting oil field tubular goods with instrument to show any damage or defect, externally inspecting tubular goods magnetically, or a combination of both the internal and external inspections. These services are performed on material returning from the field as a part of the customer's procedure for deciding whether or not to reuse the material and also on material prior to its being shipped out for use by the customer.
(3) Hydrostatic Pipe TestingThis service consists of filling a joint or length of pipe with water and putting the joint under pressure with a pump up to a point equal to 80% of the minimum yield of the pipe or any pressure requested by the customer. This service is performed to determine whether or not the material, new or used, is of a serviceable condition.
The Louisiana Sales Tax Statute, Title 47, R.S.1950:301(14)(g) defines "sales of services" to include "the furnishing of repairs to tangible personal property, including by way of illustration and not of limitation, the repair and servicing of automobiles and other vehicles, electrical and mechanical appliances and equipment, watches, jewelry, refrigerators, radios, shoes, and office appliances and equipment."
Inasmuch as pipe cleaning and pipe inspection as well as hydrostatic pipe testing are services of a type not included in the definition of "sales of services", such services would not be subject to sales tax. The cleaning and spraying fluids, brushes and other equipment used in performing the service are subject to a sales and/or use tax to the dealer performing this service, since these items are used in the conduct of the service rendered. If the pipe requires that repairs be made, then the repair would be subject to a sales tax.
(4) Pipe Threading and Beveling These services are of a repair nature and consist simply of cutting threads on pipe at our shop. At times we furnish and charge our customers for pipe couplings which we screw on to the ends of the pipe.
Section 301(12) defines "sale" to mean "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work...."
The threading and beveling, as well as the furnishing of pipe couplings, is subject to the sales tax based upon the charges made for threading, beveling and also the charge made for the couplings.
 Respectfully,
 /s/ S. Feinblum
 S. Feinblum, Director
 Sales Tax Division
SF:ew
NOTES
[1] In the title of the partition, plaintiff calls itself "Intracoastal Pipe Service Co., Inc." while in the first article therein it calls itself "Intracoastal Pipe Service, Inc. (omitting the "Co."). The judgment of the trial court uses the name "Intercoastal Pipe Service Company, Inc."
[2] Sometime in 1985, ITCO purchased machinery for its Amelia facility which allowed it to perform repairs at that location for the first time. Through error allegedly due to miscommunication between its Harvey office and its Amelia office, no sales tax on these repairs was collected or remitted from the Amelia facility to Assumption although ITCO does not dispute they were due.
[3] The argument was raised that in 1987, the Department of Revenue and Taxation adopted a new regulation to accompany La.R.S. 47:301(14)(e) which would declare restoration, renovation and cleaning of pipe, tanks, and barges taxable as either cleaning or repair. Whether this regulation was adopted by the Department and whether it is valid have no bearing on our consideration of the pertinent statutes for the assessment period July 1983 through July 1986.