JOSEPH P. LOPINTO, III, SHERIFF AND
EX-OFFICIO TAX COLLECTOR FOR THE
PARISH OF JEFFERSON

VERSUS

EXPEDIA, INC. (WA), ET AL.

NO. 21-CA-132

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 790-815, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

December 23, 2021

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED**
    **JGG**
    **RAC**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy J. Vega
Chief Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR
FOR THE PARISH OF JEFFERSON
     Drew M. Talbot
     Alexandria E. Seay

COUNSEL FOR DEFENDANT/APPELLEE,
EXPEDIA, INC. (WA), HOTELS.COM, LP, HOTWIRE, INC., EGENCIA, LLC,
TRIP NETWORK, INC., ORBITZ, LLC, INTERNETWORK PUBLISHING
CORP. (D/B/A LODGING.COM), THE PRICELINE GROUP INC. (F/K/A
PRICELINE.COM INCORPORATED, K/N/A BOOKING HOLDINS INC.),
TRAVELWEB, LLC, AND PRICELINE.COM LLC
     Edward D. Wegmann
     Marjorie A. McKeithen
     Matthew A. Mantle
     Allison B. Kingsmill

COUNSEL FOR DEFENDANT/APPELLEE,
TRIP NETWORK, INC., ORBITZ, LLC, INTERNETWORK PUBLISHING
CORP. (D/B/A LODGING.COM), EXPEDIA, INC. (WA), HOTELS.COM LP,
HOTWIRE, INC. AND EGENCIA, LLC
     Winstol D. Carter, Jr.
     Elizabeth B. Herrington

COUNSEL FOR DEFENDANT/APPELLEE,
TRAVELOCITY.COM LP (N/K/A TVL, LP) AND SITE 59.COM LLC
     Kelly E. Ransom

COUNSEL FOR DEFENDANT/APPELLEE,
THE PRICELINE GROUP INC. (F/K/A PRICELINE.COM INCORPORATED
AND N/K/A BOOKING HOLDINGS INC.), TRAVELWEB LLC AND
PRICELINE.COM LLC
     Anne Marie Seibel
     Tiffany Degruy

**GRAVOIS, J.**

Plaintiff/appellant, Joseph P. Lopinto, III, in his official capacity as the duly elected Sheriff of Jefferson Parish and the Ex-Officio Tax Collector for the Parish of Jefferson, appeals the trial court's September 16, 2020 judgment which granted the motion for summary judgment filed by defendants, four groups of online travel companies, and which denied the cross-motion for partial summary judgment filed by plaintiff, finding that defendants did not owe plaintiff sales and occupancy taxes on certain amounts charged by defendants to consumers to facilitate online reservations between Jefferson Parish hotels and the consumers. Plaintiff also appeals the trial court's June 12, 2019 judgment which dismissed his Louisiana Unfair Trade Practices Act claim. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 2, 2019, plaintiff/appellant, Joseph P. Lopinto, III, in his official capacity as the duly elected Sheriff of Jefferson Parish and the Ex-Officio Tax Collector for the Parish of Jefferson (the "Sheriff"), filed suit against defendants/appellees, four groups of online travel companies (the "OTCs")[1] who

---

[1] Named as defendants in the petition were four distinct groups of online travel companies, or OTCs. The four distinct groups consisted of: 1) the *Expedia* defendants; 2) the *Orbitz* defendants; 3) the *Priceline* defendants; and 4) the *Travelocity* defendants; and included their respective subsidiaries or indirect subsidiaries.

The *Expedia* defendants were identified as: Expedia, Inc. (WA); Hotels.com, L.P.; Hotwire, Inc.; and Egencia, LLC. They are affiliated business entities through the common corporate parent, Expedia, Inc., a Delaware corporation.

The *Orbitz* defendants were identified as: Trip Network, Inc.; Orbitz, LLC; and Internetwork Publishing Corp. (d/b/a Lodging.com). These companies are indirect subsidiaries of Orbitz Worldwide, Inc. Expedia, Inc. (DE) has acquired Orbitz Worldwide, Inc.

The *Priceline* defendants were identified as: The Priceline Group, Inc. (f/k/a priceline.com Incorporated); Priceline.com LLC; and Travelweb, LLC.

The *Travelocity* defendants were identified as: TVL LP (f/k/a Travelocity.com, LP); and Site59.com LLC. TVL LP and Site59.com, LLC are indirect subsidiaries of Sabre Holdings Corporation. Expedia, Inc. (DE) has acquired the Travelocity brand and other associated assets from Sabre Corporation.

The petition also named Destination Management, Inc. as a defendant, along with "Does 1 Through 1000, Inclusive" as unknown defendants being sued by such fictitious names. Destination Management, Inc. and the fictitious defendants "Does 1 Through 1000, Inclusive" are not involved in this appeal.

facilitated online reservations for hotel rooms located in Jefferson Parish between consumers and hotels. The petition alleged that the OTCs breached their statutory obligations as "dealers" operating in Jefferson Parish to remit Jefferson Parish sales and occupancy taxes to the Sheriff that were charged to and collected from the OTCs' customers, such taxes being due and owing to the Sheriff under relevant tax ordinances properly enacted and levied by the relevant taxing authorities within Jefferson Parish, as further described below. Specifically, the Sheriff alleged that the subject taxes were due and owing to the Sheriff "on taxable sales of services in the form of furnishing sleeping rooms to transient guests,"[2] and that the OTCs were "all engaged in the business of furnishing sleeping rooms under the relevant definitions of both the sales tax and the occupancy tax." The Sheriff's suit seeks taxes from the OTCs going back almost 20 years.

The petition alleged that under what is commonly known as the "merchant model," the OTCs entered into contracts with the individual lodging places wherein the parties agreed on a "wholesale" price for the rooms and the OTCs acquired the right to display, offer, and facilitate reservations of the rooms to the public at a higher "retail" rate, with the OTCs being given broad discretion in establishing the higher "retail" rate that they ultimately charged to consumers. The petition further alleged that the OTCs did not separately disclose to the consumer (1) the "wholesale" rate the hotel charges for the room, (2) the amount retained by the OTCs from the amount collected from the consumer for its travel-related services and fees, and (3) the amount of sales and/or occupancy taxes charged to

---

[2] According to the petition, the Parish of Jefferson imposes a sales and use tax which is levied on hotel/motel room rentals at the aggregate price of 3.75%, consisting of a 1.50% sales tax levied by the Jefferson Parish Council, a 2.00% sales tax levied by the Jefferson Parish School Board, and a 0.25% sales tax levied by the Law Enforcement District. Additionally, the City of Kenner levies a 2.00% Airport District tax. In addition to Jefferson Parish sales taxes, the Parish of Jefferson levies and imposes an occupancy tax on hotel/motel room rentals at the aggregate rate of 3.00% for room rentals on the East Bank of Jefferson Parish, and at the aggregate rate of 2.00% for room rentals on the West Bank of Jefferson Parish.

the consumer as a result of the transaction. The petition alleged that the OTCs have total control over the price they offer the lodging to the consumer, and therefore control the profit they make from their "mark-up." The petition further alleged that the OTCs "sell" rooms to the consumers, and collect payments, including sales and occupancy taxes, from the consumers at the time of booking, but do not remit the full sales and occupancy tax amounts collected directly to the Sheriff. The petition asserted that the OTCs did not maintain documentation that any amounts they collected from the consumers in sales and occupancy taxes are paid to the Sheriff, nor did the OTCs properly file regular, periodic Jefferson Parish sales and occupancy tax/returns/reports, as required by statutory law for all "dealers." The petition further asserted that the OTCs are collecting sales and occupancy taxes from consumers on the "retail" rate charged to consumers, but are not reporting and remitting those taxes to the Sheriff, thereby depriving the Sheriff and the taxing authorities in Jefferson Parish of the full amounts due and owing to them from each sale of Jefferson Parish lodging to the consumers.

The petition goes on to assert eight specific causes of action or claims for relief:

> Claim One: *Declaratory Judgment Pursuant to La. C.C.P. art. 1871* – The Sheriff seeks a declaration of rights and/or duties with respect to all defendants as to, among other things, whether the OTCs owe a duty, under law, to collect and remit sales and occupancy taxes from consumers who allegedly purchase from the OTCs the right to occupy lodging in Jefferson Parish, whether the sales and occupancy taxes are based on the "retail" room rate, including any "fees" and/or "mark-ups" charged by the OTCs, and whether the OTCs, as "dealers," have failed to fulfill their statutory duties under law to remit sales and occupancy taxes directly to the Sheriff;

> Claim Two: *Violations of Uniform Local Sales Tax Code* – The Sheriff alleges that the OTCs are obligated under La. R.S. 47:337.17 and La. R.S. 47:337.18 to collect Jefferson Parish sales and occupancy taxes on lodging and to remit such taxes to the Sheriff, and seeks recovery of the taxes which are allegedly owed, plus penalties and interest under the relevant statutory and ordinal provisions;

> Claim Three: *Violation of State Law and Constitution Ancillaries* – The Sheriff alleges that the OTCs are liable for the sales and occupancy taxes

owed to the Sheriff under relevant sections of the Uniform Local Sales Tax Code (La. R.S. 47:337.1, *et seq.*);

Claim Four: *Louisiana Unfair Trade Practices Act ("LUTPA")* – The Sheriff seeks recovery of unpaid sales and occupancy taxes from the OTCs for alleged use of "unfair and deceptive methods, acts and practices" in violation of LUTPA, La. R.S. 51:1405;

Claim Five: *Unjust Enrichment* – The Sheriff alleges that the OTCs retain sales and occupancy tax monies due and owing to the Sheriff without justification, causing Jefferson Parish to become impoverished and unjustly enriching the OTCs;

Claim Six: *Imposition of Constructive Trust* – The Sheriff alleges the OTCs were in the possession and control of and failed to remit sales and occupancy taxes collected from consumers, and that such taxes are due and owing as a "constructive trustee" for the benefit of Jefferson Parish;

Claim Seven: *Breach of Fiduciary Duty* – The Sheriff alleges that the OTCs collected sales and occupancy taxes from consumers, thereby creating a "fiduciary duty" owed to the Sheriff and Jefferson Parish for the taxes due and owing, which duty has allegedly been breached by the OTCs by their alleged failure to pay sales and occupancy taxes owed to the Sheriff; and

Claim Eight: *Summary Determination of Damages* – The Sheriff alleges that the OTCs owe restitution and must disgorge the taxes due and owing to the Sheriff, plus penalties, interest, and reasonable attorneys' fees pursuant to La. R.S. 47:337.13.1.

The OTCs filed answers to the petition, first of all denying that the "fees" portions of the subject transactions were taxable "sales of services" under the Uniform Local Sales Tax Code (La. R.S. 47:337.1, *et seq.*). They further denied that they were "dealers" under said Tax Code who were responsible for collecting and remitting taxes to the Sheriff. Defendants also filed exceptions of no right of action, no cause of action, and prescription, as well as affirmative defenses to the allegations in the Sheriff's petition.

Defendants also collectively filed a motion for judgment on the pleadings with supporting memorandum regarding Claims Four through Eight of the Sheriff's petition. The Sheriff filed an opposition thereto, to which the OTCs replied. The motion for judgment on the pleadings was heard on May 29, 2019. The trial court took the matter under advisement and rendered judgment thereon on June 12, 2019. The judgment granted the motion in part, dismissing Claim Four:

*Louisiana Unfair Trade Practices Act ("LUTPA")*, <u>Claim Five</u>: *Unjust Enrichment*, and <u>Claim Eight</u>: *Summary Determination of Damages*. The judgment further denied the motion in part with respect to <u>Claim Six</u>: *Imposition of Constructive Trust*, and <u>Claim Seven</u>: *Breach of Fiduciary Duty*.

On May 27, 2020, the OTCs collectively filed a motion for summary judgment as to liability concerning the remaining claims (<u>Claims One, Two, Three, Six, and Seven</u>), arguing that the "fees" collected by the OTCs for facilitating the online hotel reservations for consumers in Jefferson Parish were not taxable "sales of services" under the Uniform Local Sales Tax Code, specifically under La. R.S. 47:301(14)(a). Due to the confidential and proprietary information regarding the OTCs' business practices contained therein, the parties agreed that the motion for summary judgment and the evidence attached thereto would be sealed. On June 24, 2020, the Sheriff filed a cross-motion for partial summary judgment on liability, also supported by sealed evidence. Defendants filed an opposition to the Sheriff's cross-motion for partial summary judgment on August 4, 2020, as well as objections and responses to the Sheriff's statement of uncontested material facts. On August 14, 2020, the parties filed additional replies and responses. The motions for summary judgment were heard on August 19, 2020.

On September 16, 2020, the trial court rendered judgment in favor of the OTCs, granting their motion for summary judgment and denying the Sheriff's cross-motion for partial summary judgment, and dismissing the Sheriff's petition against the OTCs as to the remaining claims with prejudice. The trial court issued reasons for judgment that same day. Therein, the trial court found that the "fees" collected by the OTCs for facilitating the hotel reservations were not taxable "sales of services" as per the Uniform Local Sales Tax Code. The trial court further held that the OTCs were not "dealers" under said Tax Code. The Sheriff filed a petition

for a suspensive appeal on October 15, 2020, which was granted on October 20, 2020.

On appeal, the Sheriff argues four assignments of error:

1) The district court erred by ignoring the controlling jurisprudence from the Louisiana Supreme Court in *Normand v. Wal-Mart.com USA, LLC*, and by failing to find that the OTCs contractually assumed the obligations of Jefferson Parish hotels, as "dealers," to properly charge, collect and remit sales and occupancy taxes to the Sheriff;

2) The district court erred by ignoring the controlling jurisprudence from this Court in *Lerner NY., Inc. v. Normand*, and permitting the OTCs to charge and collect sales and occupancy taxes from hotel room consumers while imposing none of the corresponding dealer or fiduciary obligations on the OTCs;

3) The district court erred by finding that the Sheriff's petition failed to state a cause of action against the OTCs under the Louisiana Unfair Trade Practices Act;[3] and

4) The district court erred by determining that the OTCs are not "dealers" under Louisiana statutory law.

Appellees, the OTCs, urge in brief that as the Sheriff failed to address or argue on appeal the portion of the trial court's judgment that found that the "fees" retained by the OTCs for facilitating hotel reservations were not taxable "sales of services" under the Uniform Local Sales Tax Code, this Court should affirm the judgment under review without reaching any of the Sheriff's arguments regarding the OTCs' alleged status as "dealers" under said Tax Code, as the non-taxable status of the transactions is the threshold issue and provides this Court with a basis to affirm the judgment without reaching the Sheriff's arguments on appeal.

The Sheriff, in his reply brief, states that the threshold issue is whether the OTCs breached their fiduciary duty to the Sheriff, because the OTCs allegedly collected taxes due to the Sheriff and failed to remit them to the Sheriff. The Sheriff also argues that the issue of whether the "fees" collected by the OTCs are

---

[3] The Sheriff's LUTPA claim was dismissed in the trial court's June 12, 2019 judgment on defendants' motion for judgment on the pleadings, wherein the court held that the Sheriff "fails to state a cause of action under the Louisiana Unfair Trade Practices Law … ."

taxable "sales of services" under La. R.S. 47:301(14)(a) is embedded within the larger context of Assignment of Error No. 4 in its brief on the issue of whether the OTCs are "dealers" under the Uniform Local Sales Tax Code. Thus, the Sheriff argues that the issue of whether the "fees" charged by the OTCs under the "merchant model" used by the OTCs in the transactions in question are taxable "sales of services" under La. R.S. 47:301(14)(a) is indeed before this Court for review in this appeal.

<u>**ANALYSIS**</u>

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *King v. Illinois Nat. Ins. Co.*, 08-1491 (La. 4/3/09), 9 So.3d 780, 784.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Appellate courts review summary judgments *de novo* using the same criteria applied by trial courts to determine whether summary judgment is appropriate.

*Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A *de novo* review or an appeal *de novo* is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. *Wooley v. Lucksinger*, 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 352; *Sarasino v. State through Department of Public Safety and Corrections*, 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 927. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

The substance of a transaction, not its form, controls for the purpose of classifying a transaction as taxable or not. *Am. Multi-Cinema, Inc. v. Normand*, 18-488 (La. App. 5 Cir. 4/3/19), 268 So.3d 1167, 1172, citing *J & B Pub. Co. of La., Inc. v. Secretary, La. Dept. Rev. & Taxation*, 34,105 (La. App. 2 Cir. 12/15/00), 775 So.2d 1148.

In *Lerner New York, Inc. v. Normand*, 19-350 (La. App. 5 Cir. 12/26/19), 288 So.3d 242, 248-49, *writ denied*, 20-00162 (La. 5/1/20), 295 So.3d 939, and *writ denied*, 20-00234 (La. 5/1/20), 295 So.3d 944, this Court set forth the fundamental principles of statutory interpretation:

> It is a fundamental principle of statutory interpretation that when a "law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9, *McLane Southern, Inc. v. Bridges*, 11-1141 (La. 1/24/12), 84 So.3d 479, 483, *rehearing denied* 3/9/12. This principle applies to tax statutes. *Id.* Words of a law must be given their generally prevailing meaning. La. C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. The meaning of words or phrases may be ascertained by the words and phrases with which they are associated. *Caldwell v. Janssen Pharm., Inc.*, 2012-2447 (La. 1/28/14), 144 So.3d 898, 908, citing *Pumphrey v. City of New Orleans*, 05-0979 (La. 4/4/06), 925 So.2d 1202, 1211.

Further, in *Am. Multi-Cinema, Inc. v. Normand*, 18-487 (La. App. 5 Cir. 3/27/19), 267 So.3d 197, 200, this Court discussed the standards for reviewing taxing statutes:

> Taxing statutes must be strictly construed against the taxing authority. *Goudchaux/Maison Blanche, Inc. v. Broussard*, 590 So.2d 1159, 1161 (La. 1991). Where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. *Id.*; *Cleco Evangeline, LLC v. La. Tax Comm'n*, 01-2162 (La. 4/3/02), 813 So.2d 351, 356.

> Furthermore, words defining a thing to be taxed should not be extended beyond their clear import. *Cleco*, 813 So.2d at 355. Absent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question. Unless the words imposing the tax are expressly in the statute, the tax cannot be imposed. *Id.*

In the instant case, the parties agree that the summary judgment procedure is appropriate to be used herein, since there is no genuine issue as to material fact, and this matter hinges upon statutory interpretation of the relevant taxing statutes.

On appeal, this Court must decide whether the trial court erred in its September 16, 2020 judgment in granting the motion for summary judgment in favor of the OTCs and in denying the cross-motion for partial summary judgment filed by the Sheriff. The threshold issue in connection therewith is whether under the Uniform Local Sales Tax Code, additional taxes are due to the Sheriff on the "fees" portions of the transactions between the OTCs and consumers for facilitating hotel reservations in Jefferson Parish for the consumers. Resolution of this issue is dependent on whether the "fees" retained by the OTCs in each transaction are proceeds of taxable "sales of services" under La. R.S. 47:301(14)(a). We must also decide whether the OTCs are "dealers" under the Uniform Local Sales Tax Code. Finally, we must decide whether the trial court properly dismissed the Sheriff's alleged LUTPA claim in its June 12, 2019 judgment on defendants' motion for judgment on the pleadings.

We will address the Sheriff's assignments of error through discussion, analysis, and resolution of the issues presented thereby, as set forth below.

**First issue: Did the OTCs perform taxable "sales of services"?**

La. R.S. 47:302 – Imposition of Tax, states in pertinent part:

> C. (1) There is hereby levied a tax upon all *sales of services, as herein defined*, in this state, at the price of two percent of the amounts paid or charged for such services.
>
> (2) The tax levied in this Section *shall be collected from the dealer, as defined herein*, shall be paid at the time and in the manner hereinafter provided, and shall be in addition to all other taxes, whether levied in the form of excise, license, or privilege taxes, and shall be in addition to taxes levied under the provisions of Chapter 3 of Subtitle II of this Title.

(Emphasis added.)

Thus, this statute contemplates two things: first, that only the specifically defined "sales of services" are taxable, and second, that the "dealer," who is a party to the taxable transaction, is the party responsible for remitting the taxes collected to the Sheriff. *See Normand v. Wal-Mart.com USA, LLC*, 19-00263 (La. 1/29/20), --- So.3d ----, 2020 WL 499760.

Only those services defined as "sales of services" pursuant to La. R.S. 47:301(14) are taxable. *Normand v. Cox Communications Louisiana, LLC*, 14-563 (La. App. 5 Cir. 12/23/14), 167 So.3d 156, 162, *writ denied*, 15-0158 (La. 4/10/15), 163 So.3d 815, citing La. R.S. 47:302(C) and *Intracoastal Pipe Service, Co., Inc. v. Assumption Parish Sales & Use Tax Dep't*, 558 So.2d 1296, 1298 (La. App. 1 Cir. 1990), *writ granted on other grounds*, 563 So.2d 863 (La. 1990).

La. R.S. 47:301(14)(a) provides:

> (14) "Sales of services" means and includes the following:
>
> > (a) The furnishing of sleeping rooms, cottages or cabins *by hotels*.

(Emphasis added.)

Prior to the 2016 legislative amendment to the statute, La. R.S. 47:301(6)(a) defined a "hotel" as "any establishment engaged in the business of furnishing sleeping rooms, cottages or cabins to transient guests, where such establishment consists of six or more sleeping rooms, cottage or cabins at a single business location."

In 2016, the Legislature amended and expanded the definition of "hotel," found in La. R.S. 47:301(6)(a), to include the following, in pertinent part:

> (6)(a) "Hotel" means and includes any establishment or person engaged in the business of furnishing sleeping rooms, cottages, or cabins to transient guests, where such establishment consists of sleeping rooms, cottages, or cabins at any of the following:
>
> (i) A single business location.
>
> (ii) A residential location, including but not limited to a house, apartment, condominium, camp, cabin, or other building structure used as a residence.
>
> (iii) For purposes of this Chapter, hotel shall not mean or include any establishment or person leasing apartments or single family dwelling on a month-to-month basis.

Jefferson Parish imposes a local sales tax on sales, leases, and rentals of tangible personal property and on the "sales of services." Jefferson Parish Code of Ordinances, Ch. 35, Art. II, Sections 35-22, 35-23, 35-24, 35-24.1. Jefferson Parish has adopted by reference the definitions set forth in La. R.S. 47:301. *Id.*, Section 35-17.

The evidence provided in the summary judgment motions described the OTCs' transaction structure with the hotels generally as follows.[4]

The OTCs allow consumers to make travel arrangements, including hotel reservations, through their websites under what is commonly known as the "merchant model." Typically, under this model, the OTCs enter into contracts

---

[4] *See generally*, the affidavit of Silvia Camarota, Senior Director, Market Management, of the Expedia defendants, and the affidavit of Mark Koehler, Senior Vice President, Hotels, for priceline.com. Both affidavits were attached to the OTCs' motion for summary judgment.

with individual hotels (or hotel chains) which allow the OTCs to facilitate prepaid reservations of the respective hotel's rooms through the OTCs' websites. The hotels themselves remain the operators of their respective hotels. The contracts allow the OTCs to publish information provided by the hotels to the OTCs on the OTCs' websites and to facilitate travel reservations at the hotels. The hotels determine the rental rates at which they will furnish rooms to travelers who place reservations through the OTCs. The hotels can typically increase or decrease the room rates at their discretion, and increase or decrease the number of reservations made available through the OTCs' websites, or even eliminate the number of reservations made available through the OTCs' websites completely, depending on the hotels' anticipated need to fill more rooms.

Typically, consumers visit the OTCs' websites and ultimately select from the hotel accommodations made available to the OTCs from the hotels and request a reservation for their desired accommodation. The OTC, as an intermediary, contacts the pertinent hotel and the hotel decides whether to accept or reject the reservation request.[5] If the hotel elects to accept the reservation, the hotel makes the reservation in the name of the traveler. The hotel sends a reservation confirmation number back to the OTC, which is then forwarded to the traveler, along with other pertinent information, including the terms, conditions, and rules the hotel imposes on the reservation and the hotel stay.

Once the reservation is confirmed, the traveler's credit card is charged a combined amount that includes: (1) the consideration the hotel charges for the traveler to rent the room; (2) an amount to cover the anticipated taxes the hotel will be responsible for on the rental rate charged by the hotel; and (3) additional

---

[5] Typically, this communication between the OTC and the hotel is handled electronically and is completed relatively quickly.

amounts retained by the OTC in payment for its services in facilitating the reservation and in collecting the room charge and the anticipated taxes.

On the confirmation sent to the traveler, the charges are typically displayed in two components: (1) the nightly charge ("Room Price"), which is a combination of (a) the amount the hotel charges for occupancy of the room, and (b) a facilitation fee retained by the OTC for its services in facilitating the reservation; and (2) the tax recovery charge ("Taxes & fees"), which is a combination of (a) the anticipated taxes the hotel will be responsible for on the rental rate charged by the hotel, and (b) a service fee retained by the OTC as additional compensation for its services. On their websites, the OTCs explain all applicable charges to the traveler, including that the charges include a facilitation fee and a service fee. Before completing the booking, the traveler must agree to the terms and conditions which contain explanations of the applicable charges.

Typically, upon arrival at the hotel, the traveler checks in by identifying himself. Once the hotel confirms that the traveler has a prepaid reservation, and assuming the traveler meets any conditions imposed by the hotel for gaining occupancy, the hotel assigns and grants occupancy of a specific room to the traveler. At checkout, the traveler is responsible for paying the hotel directly for any incidental services consumed during the stay.

Typically, in due course, the hotel receives payment from the OTC of the amount the hotel charged for occupancy of the room, plus the anticipated taxes the hotel will be responsible for on the rental rate charged by the hotel, based on the applicable tax rate. Then, in due course, the hotel remits the taxes on the amount the hotel charged for occupancy of the room to the appropriate taxing authority.

The evidence attached to the motions for summary judgment undisputedly establishes that the OTCs do not own or possess hotel rooms, and cannot grant travelers the right to possess, use, or occupy hotel rooms; only the physical hotels

can do so.  Further, according to the undisputed evidence, the OTCs do not manage

or operate any hotel, nor do they perform the daily functions of a hotel, such as

those services provided and required to make travelers comfortable during their

stay, like maid service, security, concierge, or dining services.  Further, the OTCs

do not create or implement hotel policies, procedures, or marketing, or hire, train,

or supervise hotel employees.  They do not check in the travelers, assign them

rooms, or give them access to their rooms.

The trial court found that the OTCs were clearly not "hotels" under the pre-

2016 version of La. R.S. 47:301(6)(a) ("any establishment engaged in the business

of furnishing sleeping rooms, cottages or cabins to transient guests, where such

establishment consists of six or more sleeping rooms, cottage or cabins at a single

business location.").  Upon *de novo* review, we find no error in this legal

conclusion.  The OTCs clearly did not fit this definition of "hotel," as they are not

physical establishments and the unrefuted evidence shows that they do not own or

control hotel rooms in a physical manner.

The trial court also found that the OTCs were not "hotels" under the 2016

amended version of La. R.S. 47:301(6)(a), quoted *supra*.  Likewise, upon *de novo*

review, we find no error in the trial court's analysis or conclusion in this regard.

The trial court found that the OTCs met the definition of "person" under La. R.S.

47:301(8)(a).[6]  However, the trial court concluded that the evidence failed to show

that the OTCs were "engaged in the business of furnishing sleeping rooms within

the meaning of the statute," because again, the OTCs have no physical control over

hotel rooms or an inventory of hotel rooms.  Further, the legislative history of the

statute makes clear that the above-quoted 2016 amendment to La. R.S.

---

[6] La. R.S. 47:301(8)(a) defines "person" as follows: "'Person', except as provided in Subparagraph (c), includes any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, this state, any parish, city and parish, municipality, district or other political subdivision thereof or any board, agency, instrumentality, or other group or combination acting as a unit, and the plural as well as the singular number."

47:301(6)(a) was intended to extend the tax's reach to include those persons engaged in furnishing sleeping rooms via online services such as AirBnB.[7]

A plain reading of the language of the entirety of La. R.S. 47:301(6)(a) clearly defines hotel as an "establishment or person" with a physical location where rooms are furnished. As the OTCs' affidavit evidence clearly establishes, the OTCs, while "persons," are not "establishments" with a physical location and do not provide customers with access to any physical location.

The cases cited by the Sheriff in his exhibits to the trial court, which are from other taxing jurisdictions, focus on the definition of "furnishing." At least two of those cases, which again are from other taxing jurisdictions whose tax statutes do not exactly track La. R.S. 47:301(14)(a), found that the OTCs "furnished" rooms because they facilitated reservations. We find that "facilitating reservations" is different than "furnishing rooms," and to interpret our statute in this way is contrary to our mandate to construe taxing legislation against the Sheriff and in favor of the taxpayer. *See Am. Multi-Cinema, Inc. v. Normand*, 18-487, *supra*. And, La. R.S. 47:301(14)(a) contains the additional requirement that the furnishing of sleeping rooms be done "by hotels."[8] When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. Accordingly, since the OTCs clearly do not meet the plain definition of "hotel" under the statute, either before 2016 or

---

[7] Our conclusion that the OTCs are not "hotels" under La. R.S. 47:301(6)(a) is further supported by the Legislature's rejection of a 2016 amendment to that statute to expand the definition of "hotel" prospectively to include online room "remarketers," which was proposed to be defined as to include "any person or business entity that reserves, arranges for, conveys, or furnishes occupancy, via Internet or other electronic communication, to an occupant for rent in an amount determined by the remarketer, directly or indirectly." It seems obvious that had the Legislature desired for companies like the OTCs to be considered within the definition of "hotel" for "sales of services" tax purposes, it would have not rejected the proposed amendment.

[8] The Sheriff argued below that the OTCs acquired an inventory of hotel rooms from the hotels which they (the OTCs) controlled, but without evidentiary support.

after the 2016 amendment to La. R.S. 47:301(6)(a) discussed above, we find that their services in facilitating reservations between Jefferson Parish hotels and consumers are clearly not taxable "sales of services" under La. R.S. 47:301(14)(a).

Accordingly, the Sheriff's arguments on this issue are without merit.

## Second issue: Are the OTCs "dealers" under the subject tax statutes?

Under this issue, the Sheriff claims that the OTCs have assumed the status of "dealers" because they have contractually assumed the act of collecting the subject taxes from the consumers, which then obligates them to be the party who remits the subject taxes to the Sheriff.

In brief, the Sheriff argues that the contracts between the OTCs and the hotels establish that: (1) the OTCs are the merchant or seller of record in the subject transactions, not the hotels; (2) the OTCs establish the price charged to the hotel room consumer, not the hotels; (3) the hotels cannot provide any instruction to the OTCs regarding whether or not to charge and collect sales and occupancy taxes to consumers and the amount of taxes to charge on a given transaction; and (4) the hotels are contractually prohibited from collecting taxes directly from the consumers and from bypassing the OTCs' collection of taxes from the consumers. Thus, the Sheriff argues, in accordance with the Supreme Court's holding in *Normand v. Wal-Mart.com USA, LLC*, *supra*, the OTCs have assumed various duties and obligations as "dealers" in the transactions in questions and in turn have violated their duties and fiduciary obligations owed to the Sheriff.[9]

Upon *de novo* review, we find that the statutory and jurisprudential authority asserted by the Sheriff for his position on this issue is unpersuasive. While the Sheriff relies on *Normand v. Wal-Mart.com USA, LLC*, *supra*, as jurisprudential

---

[9] La. R.S. 47:301(4) defines "dealer," in pertinent part, as follows:

(4) … "Dealer" is further defined to mean: …

    (f) (i) Any person, who sells or furnishes any of the services subject to tax under this Chapter. …

authority for his position on this claim, the *Normand* court in our opinion actually holds otherwise. In *Normand*, the Supreme Court observed:

> Furthermore, payments for retail sales are frequently processed by service providers that, like the marketplace facilitator here, are not parties to the underlying sales transactions and are not responsible for collecting sales taxes. The fact that the intermediary transmits the funds to the sellers does not relieve the sellers of their tax-collection obligation or cause the intermediary to assume the sellers' legal obligation to collect taxes. A contrary interpretation of La. R. S. 47:301(4), in light of Louisiana' [sic] general tax scheme, would authorize the imposition of liability for sales tax on **any** intermediary that aids or enables sellers to reach new customers although not selling anything (*i.e.*, payment processors, credit card companies, financial institutions, common carriers, advertisers, and broadcasters). …

*Id.* at *13. (Emphasis in original.)

The court then went on to conclude:

> Clearly, third party retailers are not prohibited from collecting sales tax directly from their purchasers, as the agreement recognizes that third party retailers may 'collect[ ] the taxes separately.' … For this reason, Wal-Mart.com did not contractually assume the obligation of the third party retailers, as dealers, to collect *and remit* sales tax. The trial court legally erred in finding to the contrary.

*Id.* at *14. (Emphasis added.)

Thus, it is clear under *Normand* that the OTCs did not become "dealers" under the subject tax statutes simply by collecting anticipated sales and occupancy taxes directly from the consumers and then transmitting the anticipated taxes to the hotels. The fact that the OTCs collect and transmit the anticipated taxes on the rental rate charged by the hotels to the hotels does not relieve the hotels of their tax-collection and remittance obligations or cause the OTCs to assume the hotels' obligation to collect *and remit* the subject taxes to the Sheriff. As noted above, under La. R.S. 47:302(C)(2), "[t]he tax levied in this Section shall be *collected from the dealer*, as defined herein, …". (Emphasis added.) The "dealer" is the party to the taxable transaction who has the legal responsibility *to remit* the taxes collected to the Sheriff. Neither the statute nor *Normand* also require that the "dealer" be the party who *collects* the taxes from the consumer. Here, the hotels,

as furnishers of the hotel rooms in question under La. R.S. 47:301(14)(a), are clearly the "dealers" in the transactions in question, and thus are the parties to the transactions who have the legal responsibility to remit the taxes collected to the Sheriff.

In light of the above, we find no error in the trial court's conclusion that the OTCs were not "dealers" under the aforementioned tax statutes. Since the OTCs are not "dealers" under the aforementioned tax statutes, they have no responsibility to remit the anticipated taxes collected in the hotel room transactions in question directly to the Sheriff.

Accordingly, the Sheriff's arguments on this issue are without merit.

**Third issue: Did the OTCs breach a fiduciary duty owed to the Sheriff?**

The Sheriff argues herein that when a party charges and collects "taxes" from an end-user and consumer, the party (here, the OTCs) automatically enters into a fiduciary relationship with the taxing authority that levies and imposes the taxes, citing *Lerner New York, Inc. v. Normand*, *supra*, wherein this Court cited *Sabine Pipe & Supply Co. v. McNamara*, 14,599 (La. App. 1 Cir. 3/2/82), 411 So.3d 1167, *reh. denied* (4/13/82), *writ denied*, 82-1109 (La. 5/28/82), 414 So.2d 1254, with approval and authority.

In this suit, as noted above, the Sheriff did not allege that the "sale of services" taxes on the "wholesale" price the hotel charges for the rooms have not been collected by the hotels from the OTCs and remitted by the hotels to the Sheriff. Rather, the Sheriff alleged that the OTCs calculate and collect the applicable sales and use taxes on the "retail price," which the Sheriff alleges is the sum of the "wholesale" price of the room charged by the hotel plus the OTCs' "markup." The Sheriff asserts that the OTCs note this on the customer's reservation confirmation as a lump sum item identified as "Room Price" (or similar), but the OTCs only remit the taxes to the hotel calculated on the

"wholesale" price of the room. The Sheriff thus argues that the OTCs have breached their duty as a fiduciary to the Sheriff to remit *all* taxes collected. The Sheriff claims, thus, that he is additionally due sales and occupancy taxes on the difference between the tax amount calculated on the "retail" price of the room and the tax amount calculated on the lesser "wholesale" price of the room that has already been collected and remitted. The OTCs denied that they calculated taxes on the "retail" price of the room.

This Court has held above that the room facilitation services performed by the OTCs are not taxable under La. R.S. 47:301(14)(A). The particular question in this issue is whether the OTCs represented to the consumer that they collected taxes on the "retail" price of the room, but remitted to the hotel only the taxes collected on the "wholesale" price of the room.

In support of this argument, the Sheriff submitted the affidavits of Jeanine Theriot and Carrie Power. Ms. Theriot is the supervisor of sales tax collection for Jefferson Parish; Ms. Power was an employee of a private auditing firm who specializes in conducting Louisiana sales, use, and occupancy tax compliance audits for local tax Sheriffs. Sheriff Lopinto was a client of this firm, and Ms. Power worked on compliance audits for the Sheriff.

In July of 2015, Ms. Power reserved a hotel room in Jefferson Parish for July 20-21, 2015, using one of the OTCs in this case, Expedia, and stayed in the hotel pursuant to that reservation. Ms. Power stated in her affidavit that Expedia sent her a confirmation email which explained the price breakdown of her room as follows:

**Price Breakdown**

| | |
|---|---|
| Room Price: | $193.55 |
| 1 night: | $169.00 |
| Taxes & fees: | $ 24.55 |
| **Total** | **$193.55** |

Collected by Expedia

Ms. Power also explained that the travel confirmation email she received contained reservation information, an itinerary number, and "pertinent information" about the hotel's check-in time, check-out time, check-in policies, room, price summary, additional hotel fees (for extra optional services such as parking, internet, and buffet breakfast), rules, and restrictions.

Ms. Power explained in the affidavit that based on Expedia's email to her, she was "led to believe" that the charge for "Taxes & fees" in the amount of $24.55 represented "Taxes & fees" collected by Expedia on behalf of "governmental entities." She stated that Expedia's confirmation email did not explicitly breakdown which portion of the $24.55 "Taxes & fees" were to be retained by Expedia as fees. She further explained that during her booking with Expedia, she was not given the ability to opt in or out of any type of "services" performed by Expedia and/or the ability to opt in or out of any corresponding "fees" associated with any purported services performed by Expedia.[10] Attached to Ms. Power's affidavit was the email confirmation she received upon booking with Expedia.

After the stay, Ms. Power gave her Expedia travel confirmation email to Ms. Theriot, who then subpoenaed the internal "Guest Folio" from the hotel in order to compare the Expedia price breakdown with the hotel charges. In her affidavit, Ms. Theriot explained that Guest Folios are documents created by the hotel that are not

---

[10] In its reasons for judgment, the trial court correctly noted that "… the fees are optional. Consumers can avoid these fees by simply booking directly with the hotel."

provided to guests who book hotel rooms through OTCs. Ms. Power's Guest Folio corresponding to the subject reservation showed $18.32 in "Room Tax," rather than the $24.55 charged by Expedia for "Taxes & fees." The Sheriff, through Ms. Theriot's affidavit, contends that this evidence shows that Expedia was not "properly handling" its sales and occupancy tax obligations and collected taxes from the consumer on the "retail" price, but remitted taxes only on the "wholesale" price, keeping the difference. The Sheriff argues that since the OTC collected more in taxes than it remitted, and that such taxes were collected for remittance to the Sheriff, the OTC breached its fiduciary duty to the Sheriff, a duty that arises in favor of the Sheriff by virtue of the OTC's status as a "dealer."

The OTCs, however, explained through the affidavit of Silvia Camarota, that the line item in a consumer's transaction with the OTC clearly states it is for "Taxes & fees," not just taxes. They explained that the bundled amount includes a fee retained by the OTC for collecting the anticipated taxes. The OTCs deny that they calculate anticipated taxes on the "retail" price. They further deny that a consumer is misled into believing that this item is for taxes only.

Upon *de novo* review, we find that although Ms. Power claimed in her affidavit that the Expedia confirmation email to her regarding her reservation "led" her "to believe" that 100% of the "Taxes & fees" amount noted on her reservation was to be remitted to "governmental entities," there is no objective basis for that belief contained in Expedia's confirmation email to her. While Expedia did not separate the exact amount being remitted as "Taxes" from the "fees," neither did it express anywhere in the confirmation email attached to Ms. Power's affidavit that 100% of the amount was charged <u>only</u> for taxes, or that the "fees" were also a category of charge being remitted to a governmental entity. Ms. Power, as either a "lay" consumer or a governmental sales tax auditor, could not have had a reasonable belief based on Expedia's confirmation email to her that "Taxes &

fees" meant only "taxes," or that lacking more information, such an amount would be entirely remitted to "governmental entities." The confirmation email sent to Ms. Power by Expedia is simply devoid of any information regarding to whom these "Taxes & fees" would be remitted.

The Sheriff relies on both *Lerner v. Normand*, *supra*, and *Sabine Pipe & Supply Co. v. McNamara*, *supra*, in support of its arguments in this regard. We find, however, that these cases are clearly distinguishable from the instant case.

In *Sabine Pipe*, Sabine Pipe & Supply Co., an out-of-state seller of oilfield equipment, sold equipment to Louisiana purchasers. On these transactions through which merchandise (personal tangible property) was brought into Louisiana for use in this State, "use taxes" were due under La. R.S. 47:302(A)(2). Sabine Pipe & Supply Co. in fact charged Louisiana use taxes to the purchasers on those purchases of equipment that were transported to Louisiana, but thereafter failed to remit any of the use taxes it collected on those transactions to the State. The court found that by undertaking to collect Louisiana's use taxes for the State, Sabine Pipe & Supply Co. entered into a fiduciary relationship with the State. One of its obligations, as fiduciary, was to remit to Louisiana those taxes which belonged to Louisiana. By failing to do so, the court found that Sabine Pipe & Supply Co. breached its fiduciary duty to the State.

The particular issue before this Court in *Lerner* was whether Lerner still owed Jefferson Parish certain sales taxes it had collected from its online purchasers/taxpayers, but had erroneously remitted to the incorrect taxing jurisdiction. The underlying transactions, sales of goods online, were clearly taxable transactions under the Uniform Sales and Use Tax Code, unlike in this case. Lerner was also clearly the "dealer" in the transaction. Lerner and the OTCs here do not stand in the same positions in the transactions, and thus this Court's

finding that Lerner was a "dealer" under the applicable statutes is not applicable to the case at bar.

In the instant case, it has already been established above that the OTCs do not owe "sales of services" taxes on the "fees" they collected from the consumer for facilitating the hotel reservations. Unlike the circumstances present in *Lerner* and *Sabine Pipe*, it has also been established above that the OTCs did not collect or retain any sales or occupancy taxes due to the Sheriff that have not already been remitted to the Sheriff by the hotels. Thus, *Lerner* and *Sabine Pipe* are not applicable to the case at bar and the Sheriff's reliance thereon is misplaced. Accordingly, we find no error in the trial court's conclusion that the OTCs do not stand in a fiduciary relationship to the Sheriff.

Accordingly, the Sheriff's arguments on this issue are without merit.

**Fourth issue: Did the trial court properly dismiss the Sheriff's LUTPA claim?**

Finally, the Sheriff argues in brief that the trial court erred in dismissing his alleged Louisiana Unfair Trade Practices Act ("LUTPA") claim against the OTCs.[11] The June 12, 2019 judgment states that the Sheriff "fails to state a cause of action under the Louisiana Unfair Trade Practices Law … ."

In *Regions Bank v. Keys*, 18-97 (La. App. 5 Cir. 10/17/18), 257 So.3d 1266, 1269 (citing *Executone Sys. Co. of La. v. Jefferson Parish Hosp. Serv. Dist. No. 2 for the Parish of Jefferson*, 15-569 (La. App. 5 Cir. 2/24/16), 186 So.3d 1210, 1215, *writ denied*, 16-0569 (La. 5/13/16), 191 So.3d 1059), this Court set forth the guiding legal principles regarding the exception of no cause of action, to-wit:

> For the purpose of the peremptory exception of no cause of action, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant. *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So.2d 641, 646; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238 (La. 1993). The purpose of

---

[11] This claim was dismissed by the trial court's judgment of June 12, 2019, which granted in part and denied in part the OTCs' motion for judgment on the pleadings.

the peremptory exception of no cause of action is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. *Id.* The exception is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true. *Scheffler*, 950 So.2d at 646; *City of New Orleans v. Board of Commissioners of the Orleans Levee District*, 93-0690 (La. 7/5/94), 640 So.2d 237, 253. Because the exception of no cause of action raises a question of law and the lower court's decision is generally based only on the sufficiency of the petition, review of the lower court's ruling on an exception of no cause of action is *de novo*. *Scheffler*, 950 So.2d at 647. Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931.[12]

In his petition, the Sheriff asserted that Jefferson Parish consumers "have been taken advantage of by [the OTCs] in being charged and paying for tax line charges that, according to [the OTCs], are not owed," and that "[t]hese actions by [the OTCs] constitute unfair and deceptive acts and practices and are the type of practices prohibited by LUTPA." The Sheriff further asserted in his petition that the OTCs breached La. R.S. 51:1405[13] by virtue of "unfair and deceptive methods, acts and practices" in the conduct of their business, thereby causing the Parish of Jefferson and the Sheriff "an ascertainable loss of revenue due to the underpayment and nonpayment of Sales and Occupancy Taxes that were, instead, converted to enrich [the OTCs]."

In brief, the Sheriff argues that the trial court erred in dismissing its LUTPA claim against the OTCs prior to discovery and presentation of evidence. The trial court found, however, that to the extent that the Sheriff was alleging that Louisiana consumers were damaged by the OTCs "deceptive" practices, the Sheriff failed to

---

[12] In contrast, the exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that have a legal interest in the subject matter of the litigation. *Lasalle v. G.E.C., Inc.*, 18-564 (La. App. 5 Cir. 4/24/19), 271 So.3d 328, 333, *writ denied*, 19-00859 (La. 9/17/19), 279 So.3d 378, and La. C.C.P. art. 927. An exception of no right of action assumes the petition states a valid cause of action and questions whether the plaintiff has a legal interest in the subject matter of the litigation. *Id.* An appellate court reviews a trial court's ruling on an exception of no right of action *de novo* because the exception raises a question of law. *Id.*

[13] La. R.S. 51:1405(A) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

state a right of action to bring this claim, as LUTPA does not allow the Sheriff to bring an action in a representative capacity, as per La. R.S. 51:1409(A).[14] The Sheriff fails to address this finding in brief.

Regarding the Sheriff's individual claim, the trial court found, in its reasons for judgment, that while it agreed that the Sheriff was a "person" for LUTPA purposes, it nonetheless found that the substance of this claim was identical to the Sheriff's claims for alleged violations of the tax statutes and ordinances addressed in claims one through three of the petition. In other words, the Sheriff alleged that the OTCs violated LUTPA by failing to remit taxes, and the damages claimed by the Sheriff were the alleged unpaid taxes. Specifically, in its reasons for judgment, the trial court found that "the Sheriff alleges no facts to support a distinction between the damages sought under LUTPA and the damages sought under claims one through three, i.e. the loss of ascertainable revenue due to the underpayment and nonpayment of taxes." In its reasons for judgment, the trial court further found that the range of prohibited practices under LUTPA is narrow, and that only "egregious actions involving fraud or deception will be sanctioned under LUTPA," citing *Cheramie Services, Inc. v. Shell Deepwater Production*, 09-1633 (La. 4/23/10), 35 So.3d 1053, 1060, which quoted *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993), as follows:

> LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. …

---

[14] La. R.S. 51:1409(A) provides, in pertinent part: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, *may bring an action individually but not in a representative capacity* to recover actual damages. …" (Emphasis added.)

The trial court specifically found, and we agree, that a failure to remit taxes is not the type of egregious action contemplated by LUTPA. Moreover, we find that the Sheriff's claim that he lost revenue through the non-remittance of taxes is actionable under the more specific tax laws relied upon by the Sheriff to assert Claims One, Two, and Three for unpaid taxes.

Upon *de novo* review, presuming that all well-pleaded facts in the Sheriff's petition are true, we find that LUTPA does not afford the Sheriff a remedy on the facts alleged in the petition. Accordingly, we find no error in the trial court's ruling that the Sheriff's petition failed to state a cause of action under LUTPA, and the resultant dismissal of the Sheriff's LUTPA claim, both individual and representative.

Accordingly, the Sheriff's arguments on this issue are without merit.

## CONCLUSIONS

In conclusion, upon *de novo* review of defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment, for the foregoing reasons, we find that there are no genuine issues as to material fact and that defendants are entitled to judgment as a matter of law, and accordingly, the trial court did not err in its September 16, 2020 judgment in granting defendants' motion for summary judgment and in denying plaintiff's cross-motion for partial summary judgment. Further, upon *de novo* review, for the foregoing reasons, we find the trial court did not err in dismissing plaintiff's alleged LUTPA claim in its June 12, 2019 judgment.

## DECREE

For the foregoing reasons, the judgments of the trial court under review are affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 23, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-132

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
DREW M. TALBOT (APPELLANT)          EDWARD D. WEGMANN (APPELLEE)      JAMES C. PERCY (APPELLEE)
MATTHEW A. MANTLE (APPELLEE)        KELLY E. RANSOM (APPELLEE)        C. HOGAN PASCHAL (AMICUS)
LORETTA G. MINCE (AMICUS)           MICHAEL R. DODSON (AMICUS)        BRANDON J. DECUIR (AMICUS)

### MAILED

WINSTOL D. CARTER, JR. (APPELLEE)
ATTORNEY AT LAW
1000 LOUISIANA STREET
SUITE 4000
HOUSTON, TX 77002

JAMES R. SWANSON (AMICUS)
JASON W. BURGE (AMICUS)
ATTORNEYS AT LAW
201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170

ANNE MARIE SEIBEL  (APPELLEE)
TIFFANY DEGRUY  (APPELLEE)
BRADLEY ARANT BOULT CUMMINGS LLP
ONE FEDERAL PLACE
1819 FIFTH AVENUE NORTH
BIRMINGHAM, AL 35203

ALEXANDRIA E. SEAY  (APPELLANT)
1800 PEACHTREE STREET NORTH WEST
SUITE 370
ATLANTA, GA 30309

ALLISON B. KINGSMILL (APPELLEE)
MARJORIE A. MCKEITHEN (APPELLEE)
ATTORNEYS AT LAW
201 ST. CHARLES AVENUE
SUITE 5100
NEW ORLEANS, LA 70170

WILLIAM R. PETERSON  (APPELLEE)
MORGAN, LEWIS & BOCKIUS LLP
1000 LOUISIANA STREET
SUITE 4000
HOUSTON, TX 77002

WILLIAM M. BACKSTROM (APPELLEE)
ATTORNEY AT LAW
201 SAINT CHARLES AVENUE
SUITE 5100
NEW ORLEANS, LA 70170

JOHN W. CRONGEYER  (APPELLANT)
4825 HIGH POINT ROAD
ATLANTA, GA 30342

ELIZABETH B. HERRINGTON  (APPELLEE)
MORGAN, LEWIS & BOCKIUS LLP
110 NORTH WACKER DRIVE
SUITE 2800
CHICAGO, IL 60606